## Steed
## v.
## Rock Hill School District
*[Cite as 2 AOA 178]*

*Case No. 1908*
*Lawrence County, (4th)*
*Decided April 4, 1990*

R.C. 3319.08.1
R.C. 4117.10

*Allen & Payne, Mr. Craig A. Allen, Ironton, Ohio, for Appellant[1].*

*Moore, Wolfe & Bentley, Mr. John Wolfe, Ironton, Ohio, for Appellee.*

*Per Curiam.*

This is an appeal from a judgment entered by the Lawrence County Court of Common Pleas overruling the objections of Rock Hill Local School District, defendant-appellant, to a referee's report, and ordering that appellant reinstate Mrs. Alvin Steed, plaintiff-appellee, to the position of assistant school nurse or a position substantially similar thereto at the rate of pay set forth in the limited contract between the parties and that appellee be awarded back pay with all benefits for any time lost up until the time of her reinstatement.

Appellant assigns the following errors:

I. THE TRIAL COURT ERRED WHEN IT DETERMINED THAT AN ARBITRATOR IN A GRIEVANCE PROCEEDING CANNOT EFFECTUATE THE TERMINATION OF THE CONTRACT OF AN EMPLOYEE WHO IS NOT A PARTY TO A GRIEVANCE PROCEEDING.

II. THE TRIAL COURT ERRED IN ITS DETERMINATION THAT PLAINTIFF'S CONTRACT CAN ONLY BE TERMINATED PURSUANT TO STATUTORY PROVISIONS OR SPECIFIC CONTRACTUAL PROCEEDINGS AND IN ITS FINDINGS THAT PLAINTIFF BE REINSTATED.

On November 29, 1988, appellee filed a complaint in the court below which alleged, in pertinent part, that on June 30, 1988, the parties entered into a two year limited contract whereby appellee would serve as assistant school nurse, that appellant had ceased to pay appellee's wages in accordance with the limited contract, that appellant had abolished her position, and that appellant had unilaterally made the determination that the limited contract was no longer in effect. Appellee prayed for a declaratory judgment stating that the contract was in full force and effect and that she was entitled to all of the benefits of the contract until its expiration date.

On December 23, 1988, appellant filed an answer which stated that appellee's position had been terminated due to an arbitration award and grievance proceeding between appellant and the Ohio Association of Public School Employees (OAPSE) Chapter 252, which was the exclusive representative of the noncertified employees of appellant, that appellee was bound by the arbitration decision, and that, pursuant to the arbitrator's award, appellant had to terminate appellee's assistant school nurse position.

On February 2, 1989, the parties filed the following stipulation of facts:

"On February 8, 1988, the Board of Education created the position of Assistant School Nurse and designated it as a bargaining unit position.

"The position of Assistant School Nurse was posted for bid by noncertified employees of the bargaining unit.

"On February 17, 1988, the Board established a salary for the position of $14,500.00 per year and the plaintiff was employed to fill said position for the balance of the 1987-1988 school year.

"Plaintiff received a limited contract, salary notice, dated June 24, 1988 (Exhibit D) for the school years 1988-1989 and 1989-1990.

"On March 16, 1988, a grievance was filed by a noncertified employee (Exhibit B),

"In accordance with the grievance procedure of the bargaining agreement between the Board of Education and the union representing the noncertified employees (OAPSE), an arbitration hearing was held on August 22, 1988 (Exhibit A). The plaintiff was not individually a party to the arbitration hearing, had no individual notice of the grievance being filed, and had no individual notice of the arbitration hearing.

"The arbitrator's decision was rendered on September 22, 1988, and the arbitrator found that the position of Assistant School Nurse was posted in violation of Article 15 of the labor agreement, further stating that, if the Board wished to continue the position, it must post a notice for bid by bargaining unit employees, with the duties and qualifications as can be met by employees of the noncertified bargaining unit (Exhibit C).

"On October 29, 1988, the Board of Education abolished the position of Assistant School Nurse from the date of employment until notified by letter on November 2, 1988, that her position was abolished.

"At no time has the Board voted to specifically terminate the plaintiff's contract.

"On November 2, 1988, plaintiff received a notice from the Superintendent regarding the arbitrator's decision (Exhibit E).

"The plaintiff was a member of the bargaining unit, which was represented by the OAPSE union. OAPSE is the exclusive representative of the bargaining unit employees pursuant to Ohio Revised Code Section 4117.

"The plaintiff was never cited under Ohio Revised Code Section 3319.08(C) with regard to termination of her contract,

"Sections 2, 3, 15, and 25 of the collective bargaining agreement may be the pertinent articles for consideration by the Court."[2]

The collective bargaining agreement entered into between appellant and OAPSE, Chapter 252 was effective from July 1, 1986 until June 30, 1989 and it provided, in pertinent part, as follows:

"1.1 The Board hereby recognizes and acknowledges the Ohio Association of Public School Employees and its Chapter 252 as the certified and exclusive representative for the bargaining unit described herein.

* * *

"6.1 Ohio Revised Code Section 3319.081(C) shall apply to discipline procedures and the Board shall comply with Section 3319.081(C) when terminating or suspending the contracts of non-teaching employees.

* * *

"25.6 Any employee has a right to be represented in the Grievance Procedure...

25.7 Hearings and conferences under this procedure shall be conducted at a time and place which will afford a fair and reasonable opportunity for all persons, including witnesses entitled to be present, to attend...

* * *

"25.12 Formal
Step One:
If the grievance is not resolved informally, the employee must, within five (5) works days after receipt of the administrator's oral answer, or not longer than twenty (20) work days from the alleged violation, submit to the administrator a signed written statement of grievance on the official grievance form with copies as indicated on the form. The statement of grievance shall name the employee, or group of employees involved...

* * *

"Step Three

* * *

"All persons listed in Step One shall have the right to participate in this step...

"Step Four
If the grievance is not resolved satisfactorily with the decision rendered after the review in Step Three, the grievance may be submitted for arbitration...

* * *

"25.15 The arbitrator's decision, if within the scope of his authority as set forth above, shall be final and binding on the Association, its members, the employee or Group of employees involved, and the Board subject to the terms and provisions of the Ohio Revised Code."

"The November 2, 1988 letter from appellant's superintendent, Lloyd Evans, to appellee stated, *inter alia*, as follows:

"The position could not be reposted to qualify under the guidelines set forth by the arbitrator. Thus, based upon the extraordinary circumstances of the arbitrator's decision, the Board took action on Saturday, October 29, 1988, to abolish the position of Assistant School Nurse."

On February 9, 1989, following a hearing, a court appointed referee filed a report and recommendation which determined that appellee

was a public employee, that appellee was covered by the 1983-1986 collective bargaining agreement between appellant and OAPSE, that the decision of the arbitrator in a grievance proceeding could not effectuate the termination of the contract of an employee who was not a party to the grievance proceeding, and that appellee's two year limited contract was a valid contract unless terminated pursuant to statutory provisions or specific contractual procedures. The referee recommended that appellee be reinstated to her position of Assistant School Nurse or a position substantially similar thereto at a rate of pay set forth in the limited contract and that appellee be awarded back pay with all benefits for any time lost up until the time of her reinstatement.

On February 22, 1989, appellant filed objections to the referee's report and recommendation. On March 29, 1989, the trial court overruled appellant's objections and adopted the referee's report and recommendation. On April 26, 1989, the trial court entered a judgment reflecting its earlier decision.

Appellant's first assignment of error asserts that the trial court erred when it held that an arbitrator in a grievance proceeding cannot effectuate the termination of the contract of an employee who is not a party to the grievance proceeding. Appellant contends that this determination was erroneous since appellee was represented in the grievance proceedings by OAPSE representatives and therefore did not have a right to specific notice of the proceedings or individual representation therein. Appellant further contends that R.C. 4117.10 gives arbitrators authority to terminate an employee's contract. R.C. 4117.10(A) provides, in pertinent part, as follows:

"(A) An agreement between a public employer and an exclusive representative entered into pursuant to Chapter 4117 of the Revised Code governs the wages, hours, and terms and conditions of public employment covered by the agreement. If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissions have no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure. When no agreement exists or where an agreement makes no specification about a

matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees..."

Prior to the enactment or R.C. Chapter 4117, public employees had been permitted to collectively bargain with their employer only when the employer, in its discretion, chose to engage in collective bargaining. *Dayton Teachers Assn. v. Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127; *Assn. of Cuyahoga Cty. Teachers of Trainable Retarded v. Cuyahoga Cty. Bd. of Mental Retardation* (1983), 6 Ohio St. 3d 190. On April 1, 1984, the General Assembly enacted the Public Employees' Collective Bargaining Act, codified in R.C. Chapter 4117, which established a comprehensive collective bargaining law for Ohio's public employees. *Ohio Assn. of Pub. School Emp. v. New Miami Local Bd. of Edn.* (1986), 31 Ohio App. 3d 163, 165.

Since appellee is a public employee and appellant is a public employer as defined in R.C. Chapter 4117, its provisions are necessarily controlling in the instant case. With certain exceptions, which are inapplicable herein, R.C. 4117.10(A) provides that a collective bargaining agreement between a public employer and an exclusive representative of public employees "prevails over any and all other conflicting laws." This wording was designed to free public employees from conflicting laws which may act to interfere with the newly established right to collectively bargain. *State, ex rel. Dispatch Printing Co., v. Wells* (1985), 18 Ohio St. 3d 382, 284; *State, ex rel. Williams, v. Belpre City School Bd. of Edn.* (1987), 41 Ohio App. 3d 1, 6-7. Accordingly, pursuant to R.C. Chapter 4117, the collective bargaining agreement is the preeminent device for determining a dispute regarding the terms therein. *Williams, supra* at 7; *see, generally* Pittner, DeTemple & Tremiti, Public Employee Collective Bargaining and Ohio Public Employers: A New Perspective (1986), 17 U. Tol. L. Rev. 7A.

The collective bargaining agreement in the case at bar provided a four step grievance procedure with the last step providing final and binding arbitration. Because of the speed, low cost and the general competence, indeed expertise, of most arbitrators, arbitration is the most favored means of contract enforcement available to educational institutions. 2 Rapp, Education Law (1987) Section 7.07[2]. Arbitration has been favored by Ohio courts

since early times, and typically unions demand binding arbitration of grievances arising under the contract. *Williams, supra* at 9; O'Reily, Ohio Public Employee Collective Bargaining (1984) 45, 46, Section 8.01.

The agreement provided that "any employee" had the right to be represented during the grievance proceedings, that the grievance proceedings would be conducted at a time and place that would afford a "fair and reasonable opportunity" for all persons to be present, that all employees involved would be named in the written grievance, and that all such named employees would have the right to participate in the grievance proceedings. Appellant's initial argument under his first assignment of error asserts that since appellee was a member of the OAPSE bargaining unit and OAPSE representatives were present during the entire grievance proceedings, no individual notice or right to be present had to be afforded to appellee.

The meaning of a contract is to be gathered from a consideration of all its parts, and no provision is to be wholly disregarded as being inconsistent with other provisions unless no other reasonable construction is possible. *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St. 3d 84, 89; *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St. 3d 163, 167. A consideration of all of the parts of the collective bargaining agreement leads to the inescapable conclusion that appellee was not given a fair and reasonable opportunity to be present at the grievance proceedings when OAPSE representatives were manifestly not representing her interests and that such failure to notify appellee and name appellee in the March 16, 1988 grievance violated Sections 25.6, 25.7, and 25.12 of the collective bargaining agreement. Under Section 25.15 of the agreement, the arbitrator's decision could only be final and binding upon appellee if that decision was rendered within the scope of the arbitrator's authority as defined in the agreement, and "subject to the terms and provisions of the Ohio Revised Code." Accordingly, in that the arbitrator acted outside the scope of his authority in disregarding the manifest provisions of the collective bargaining agreement, the trial court correctly concluded that the decision was not binding upon appellee. Appellant's further argument that labor arbitration results often have a "dramatic impact upon large numbers of employees who are neither directly involved in a particular hearing nor invited or solicited to attend said hearings" is inapposite to the situation in the case at bar, where only appellee's assistant school nurse position was being challenged.

With respect to appellant's second contention under his first assignment of error that R.C. 4117.10(A) grants arbitrators authority to terminate an employee's contract, we note initially, as does appellee, that the arbitrator's decision did not terminate appellee's limited contract. Rather, the arbitrator merely stated that if appellant wished to continue the position, it must post a notice for bid by bargaining unit employees. More importantly, as emphasized previously, the arbitrator's authority pursuant to the collective bargaining agreement was limited to the express terms of the agreement and since he disregarded those terms, his decision was not final and binding upon the parties. Appellant's first assignment of error is overruled.

Appellant's second assignment of error asserts that the trial court erred in its determination that appellee's contract could only be terminated pursuant to statutory provisions or specific contractual proceedings and in its findings that appellee be reinstated. Appellant argues that the termination procedures specified in R.C. 3119.081 are inapplicable pursuant to R.C. 4117.10 (A). R.C. 3319.081(C) provides the following procedure for termination of contracts for nonteaching employees of public schools:

"(C) The contracts as provided for in this action may be terminated by a majority vote of the board of education. Such contracts may be terminated only for violation of written rules and regulations as set forth by the board of education or for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or any other acts of misfeasance, malfeasance, or nonfeasance. In addition to the right of the board of education to terminate the contract of an employee, the board may suspend an employee for a definite period of time or demote the employee for the reasons set forth in his division. The action of the board of education terminating the contract of an employee or suspending or demoting him shall be served upon the employee by certified mail. Within ten days following the receipt of such notice by the employee, the employee may file an appeal, in writing, with the court of common pleas of the county in which such school board is situated. After hearing the appeal the common pleas court may affirm,

disaffirm, or modify the action of the school board."

The parties stipulated that appellant failed to terminate appellee's limited contract pursuant to the provisions of R.C. 3319.081. Although appellant implicitly argues that the collective bargaining agreement controls the procedure for appellee's termination rather than R.C. 3319.081(C) due to R.C. 4117.10(A), appellant fails to cite any particular provisions of the collective bargaining agreement which would "prevail" over the "conflicting" provision set forth in R. C. 3319.081(C). Indeed, a cursory review of the collective bargaining agreement indicates a clear intention on the part of the parties thereto to have R.C. 3319.081(C) apply to contractual termination of nonteaching employees. *See* section 6.1 of the collective bargaining agreement which provides in pertinent part that the "Board shall comply with Section 3319.081(C) when terminating or suspending the contracts of non-teaching employees." Accordingly, for all of the foregoing reasons, appellant's second assignment of error is overruled, and the judgment of the trial court is affirmed.[3]

*Judgment affirmed.*

GREY, J., ABELE, J., HARSHA, J., Concur in Judgment and Opinion.

---

[1] Appellant was represented by Mr. Randall L. Lambert, Ironton, Ohio, during the proceedings below.

[2] Although the parties' stipulation of facts refers to R.C. 3319.08(C) as the statutory provision under which appellant did not follow the applicable termination procedures for nonteaching employees, it is manifest from the complete record herein that the parties were actually referring to R.C 3319.081(C) rather than to R.C. 3319.081(C).

[3] Appellant does not argue herein that appellee's declaratory judgment action was barred by her failure to pursue the grievance procedure, including arbitration, set forth in the collective bargaining agreement. However, unlike the extraordinary remedy of mandamus, which would be barred by the presence of arbitration as a plain and adequate remedy at law, *Williams, supra,* a declaratory judgment is generally considered to be a remedy in addition to other legal and equitable remedies and, in the absence of a specialized statutory remedy, may be properly sought by a grievant. *See, e.g. Arbor Health Care Co. v. Jackson* (1987), 39 Ohio App. 3d 183.